# CIRCUIT COURT OF THE CITY OF RICHMOND

Doswell, L.P.

v.

Virginia Electric and Power Co.
and Zurich Ins. Co.

June 16, 1998

Case No. LC-905-4

BY JUDGE RANDALL G. JOHNSON

. This is a dispute between an independent electric power producer and its insurer. It is before the court on cross-motions for summary judgment.

Doswell, Limited Partnership, owns and operates an electrical generating power plant consisting of two facilities at the same location in Hanover County. Doswell sells all of its electrical capacity and output to defendant Virginia Electric and Power Company (VEPCO), which in turn sells electricity to its, VEPCO's, residential, business, and industrial customers.

Under the terms of two identical "Power Purchase and Operating Agreements" (PPOA), one for each facility, Doswell is required to provide electricity to VEPCO whenever VEPCO demands it through what is called a "dispatch;" that is, when VEPCO "dispatches" a facility, that facility must provide the specified amount of electricity until the dispatch is ended. VEPCO pays Doswell for actual electrical output, called "Net Electrical Output," and for Doswell's readiness to provide such output, called "Dependable Capacity," in accordance with formulas set out in the PPOAs. Payments are made by VEPCO to Doswell monthly and for Dependable Capacity average approximately $40,000,000 per facility per year. The PPOAs also provide that under certain conditions, which for purposes of this opinion can generally be described as "unexcused" power outages, Doswell must pay to VEPCO amounts determined by formulas set out in the PPOAs. Those formulas basically provide that when an unexcused outage occurs at one of Doswell's facilities, Doswell must pay to VEPCO an amount equal to a specified

percentage of Dependable Capacity payments already received by Doswell, that is, Doswell must refund to VEPCO a portion of the payments VEPCO has paid to Doswell for Dependable Capacity.

On February 8, 1995, an explosion occurred at one of Doswell's facilities. As a result, the facility was out of service for four months. VEPCO, claiming that the outage was unexcused, withheld payments from Doswell in accordance with the formulas described above. The withheld payments totaled $38,602,288.39. Doswell, claiming that the outage was excused, filed this action against VEPCO to recover the withheld payments. Doswell also named Zurich Insurance Company as a defendant, claiming that Zurich was obligated, under a policy issued to Doswell, to challenge VEPCO's action in withholding payments from Doswell and, if VEPCO's action was ultimately upheld, to reimburse the withheld amount to Doswell. Doswell and VEPCO have now settled their dispute, but Doswell and Zurich are unable to settle theirs. The present motions for summary judgment are Doswell's and Zurich's.

The relevant portions of Doswell's insurance policy with Zurich provide:

16. *Extensions of Coverage*

A. *Gross Earnings/Extra Expense*

1. This Policy is extended to insure against loss resulting directly from necessary interruption of power production and/or steam production caused by damage to or destruction of the property covered, by the peril(s) insured against, during the term of this Policy, on premises owned, leased, rented, or occupied by the Insured ... .

3. In the event of such damage or destruction, this Company shall be liable for the actual loss sustained by the Insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business, for **only such length of time** as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this Policy ... .

4. Gross Earnings:

For the purpose of this insurance, gross earnings is determined as follows:

**The sum of:**

a. total net sales of electrical power sales, and thermal sales,

b. total net proceeds from capacity payments, and bonus payments,

c. other earnings derived from operations of business, including steam sales ... .

8. Provisions applicable to Gross Earnings and Extra Expense Coverage:

a. Period of Recovery: the length of time for which loss may be claimed ... .

(4) shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this Policy.

Bold print in original.

It is Doswell's contention that the withholding of payments by VEPCO is a "loss" within the meaning of the above-quoted portions of its policy with Zurich. In fact, Doswell argues that VEPCO's withholding of payments is not a "refund" of Dependable Capacity payments at all, but rather a loss of such payments. It is Zurich's contention that the withholding of payments by VEPCO *is* a refund of earlier Dependable Capacity payments and is not a loss under the policy. Zurich further argues that the payments being refunded were made before the outage occurred and so are not within the "Period of Recovery" as that term is defined in the policy. The court holds that the withheld payments are a loss under the policy.

In reaching its holding, the court does not accept Doswell's argument that the $38,602,288.39 withheld by VEPCO is not a refund. It is. The provision of the PPOAs which allowed VEPCO to withhold the subject payments specifically refers to them as a refund:

Within sixty (60) days after the end of each [year], [Doswell] shall *refund* to [VEPCO] an amount equal to ... .

Power Purchase and Operating Agreements, § 10.9(c) (emphasis added).

The court also notes that Doswell and Zurich cite numerous cases concerning claims made by power producers under insurance policy provisions that are similar or identical to the ones at issue here. None of those cases is helpful. "When the terms of an insurance policy are clear and unambiguous, we give the words their ordinary meaning and enforce the policy as written." *Osborne v. National Union Fire Ins.*, 251 Va. 53, 56, 465 S.E.2d 835 (1996). The policy at issue in this case is not ambiguous or hard to understand. It is very simple. Zurich must pay Doswell for losses incurred as a result of power outages.

*Webster's* defines "loss" as:

> the act of losing possession; the harm or privation resulting from loss or separation; an instance of losing; a person or thing or amount that is lost.

*Webster's Ninth Collegiate Dictionary* (1987).

Whether the money withheld from Doswell by VEPCO is called a "payment," a "penalty," a "refund," a "reimbursement," a "return of Dependable Capacity payments," or anything else, it is a loss. Before the explosion on February 8, 1995, Doswell was entitled to receive $38,602,288.39 from VEPCO over a specified period of time. After the explosion, that entitlement was gone. It is hard to imagine a clearer loss.

The court also rejects Zurich's argument that since the Dependable Capacity payments being refunded were made before the explosion, the loss occurred outside of the "Period of Recovery." That simply is not true. Doswell did not lose $38,602,288.39 when it received Dependable Capacity payments from VEPCO. Doswell lost $38,602,288.39 when the refund provision of the PPOAs was invoked as a result of the explosion and outage. Since that did not occur until after the outage, Doswell's loss also did not occur until then. Zurich must cover that loss.

Finally, the court notes that the ruling now made only determines that the policy covers VEPCO's withholding of payments as a result of the February 1995 explosion and outage. The amount actually due is not now being determined. That determination can only be made after an examination of the particular facts regarding the policy's deductible, the precise formula employed by VEPCO in withholding payments, and the precise terms of Doswell's settlement with VEPCO.

A copy of an order granting partial summary judgment to Doswell [follows].

## Order

This cause came on June 4, 1998, on the motions for summary judgment of Doswell, Limited Partnership, and Zurich Insurance Company and was argued by counsel. Upon consideration whereof, and for the reasons stated in the letter opinion dated this date, it is ordered that Doswell's motion for summary judgment is granted to the extent that the court holds that the policy of insurance issued to Doswell by Zurich provides coverage for Virginia Electric and Power Company's withholding of payments to Doswell as a result

of the February 8, 1995, explosion and outage at Doswell's electrical generating facility in Hanover County. Zurich's motion for summary judgment is denied.